

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00644-CV

_____

JESSIE GOODFELLOW, Appellant

V.

CITY OF NORTH RICHLAND HILLS, T. OSCAR TREVINO, JR., BILLY PARKS, CECILLE DELANEY, RICKY RODRIGUEZ, DANNY ROBERTS, MATT BLAKE, RUSS MITCHELL, KELVIN DEUPREE, MARK HINDMAN, ROBERT BURGESS, PAULETTE HARTMAN, AND BOE BLANKENSHIP, Appellees

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-366545-25

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this interlocutory appeal,[1] Appellant Jessie Goodfellow appeals from the trial court's order granting a plea to the jurisdiction and motion to dismiss filed by Appellees, which consist of the City of North Richland Hills (the City) and certain individuals whom we will refer to as the "Individual Appellees."[2] In four issues on appeal, Goodfellow argues that the trial court erred by granting the plea to the jurisdiction and the motion to dismiss because (1) the court failed to evaluate jurisdiction based on her live pleading, (2) sovereign immunity does not bar her claims against the City for prospective injunctive relief, (3) she adequately pleaded ultra vires claims against the Individual Appellees, and (4) she adequately pleaded a constitutional takings claim against the Individual Appellees. We will affirm.

---

[1]*See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal of order granting plea to the jurisdiction by a governmental unit).

[2]The Individual Appellees consist of the following individuals who had the specified roles with the City during the relevant time: T. Oscar Trevino, Jr. (the City's mayor); Billy Parks (a member of the City council); Cecille Delaney (a member of the City council); Ricky Rodriguez (a member of the City council); Danny Roberts (a member of the City council); Matt Blake (a member of the City council); Russ Mitchell (a member of the City council); Kelvin Deupree (a member of the City council); Mark Hindman (the City's manager); Robert Burgess (the City's construction inspector); Paulette Hartman (the City's manager); and Boe Blankenship (the City's Director of Public Works).

## II. BACKGROUND

In July 2025, Goodfellow filed a lawsuit against the City, the Individual Appellees, and others.[3] Goodfellow alleged that she had purchased a home in the City and that after moving into the home, she had discovered that it flooded "whenever even a minor rain event occurred." She contended that "it was inevitable that the neighborhood that her home was located in would be subject to consistent and ongoing flooding due to [the City's] and [the Individual Appellees'] approval of the Smith Farm . . . development and construction of an adjoining neighborhood." She maintained that "[a]lthough [the City] and the [Individual Appellees] were warned that the construction of the Smith Farm . . . development and construction of the adjoining neighborhood would result in on[]going surface and ground water flooding . . . , [the Individual Appellees] acted in their own self-interests and committed the *ultra vires* act of approving the Smith Farm . . . plans without regard for [her] and other homeowners in her neighborhood." Goodfellow alleged promissory estoppel, negligent misrepresentation, and conspiracy claims against the Individual Appellees. She brought a conspiracy claim against the City and sought injunctive and declaratory relief against it.[4]

---

[3]The others—who are not parties to this appeal—included Goodfellow's realtor, a title company, and a home inspector.

[4]In that petition, Goodfellow alleged fraud, negligent misrepresentation, breach of contract, violation of the Texas Deceptive Trade Practices Act (DTPA), and conspiracy against her realtor; negligent misrepresentation, breach of contract, fraud,

3

After filing their answer, Appellees filed a plea to the jurisdiction and a motion to dismiss.[5] In that filing, Appellees argued that the trial court lacked subject-matter jurisdiction over Goodfellow's claims against them because she had failed to plead a waiver of their immunity. They also argued that she had failed to properly plead any ultra vires claims against them. A hearing on Appellees' plea to the jurisdiction and motion to dismiss was set for November 7, 2025.

On November 4, Goodfellow filed her first amended petition. In that petition, Goodfellow: (1) dropped the promissory estoppel, negligent misrepresentation, and conspiracy claims against the Individual Appellees; (2) added a constitutional takings claim against the Individual Appellees; and (3) dropped the conspiracy claim and the request for declaratory judgment against the City. That same day, Goodfellow responded to Appellees' plea to the jurisdiction and motion to dismiss. In her

---

and conspiracy against the title company; and negligent misrepresentation, breach of contract, violation of the DTPA, and conspiracy against the home inspector.

[5]The motion to dismiss was made pursuant to Texas Civil Practice and Remedies Code Section 101.106(e), (f). *See id.* § 101.106(e) ("If a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."), (f) ("If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.").

response, Goodfellow maintained that her first amended petition superseded her original petition and mooted Appellees' plea to the jurisdiction and motion to dismiss. Alternatively, she argued that the plea to the jurisdiction and motion to dismiss should be denied because the trial court had jurisdiction over her claims.

On the day of the scheduled hearing, the trial court inquired whether Appellees thought that their plea to the jurisdiction and motion to dismiss were still ripe and directed them to file a letter brief by November 12, if they so contended. As directed, Appellees filed a letter brief arguing that Goodfellow's first amended petition had not mooted the City's plea to the jurisdiction. Therein, Appellees contended that Goodfellow's first amended petition failed to assert any ultra vires actions by the Individual Appellees, that she was not entitled to prospective injunctive relief against the City because she had not asserted any direct claim against it, and that her constitutional takings claim failed because such a claim could not be asserted against an individual. On the following day, Goodfellow filed a letter brief with the trial court, once again arguing that her first amended petition had superseded her original petition, that Appellees' plea to the jurisdiction and motion to dismiss were moot, and that the trial court had jurisdiction over her claims.

Ultimately, the trial court considered Appellees' plea to the jurisdiction and motion to dismiss on submission and signed an order granting both. The order dismissed all of Goodfellow's claims against Appellees with prejudice. This interlocutory appeal followed.

## III. DISCUSSION

### A. Standard of Review and Applicable Law

Subject-matter jurisdiction is essential to a court's authority to decide a case. *Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 352 (Tex. 2024). Unless the State consents to suit, sovereign immunity deprives a trial court of subject-matter jurisdiction against the State or certain governmental units. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). Cities are political subdivisions of the State and, absent waiver, are similarly entitled to governmental immunity.[6] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26; *Bellamy v. Allegiance Benefit Plan Mgmt., Inc.*, 696 S.W.3d 751, 760 (Tex. App.—Eastland 2024, no pet.).

A plea to the jurisdiction is a dilatory plea in which a party challenges the trial court's subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A jurisdictional plea may challenge the pleadings, the existence of jurisdictional

---

[6]As we recently explained in *City of Arlington v. Cerkezi Enters., L.L.C.*, "[a]lthough courts often use the terms sovereign immunity and governmental immunity interchangeably," there is a distinction: while "sovereign immunity protects the State as well as 'various divisions of state government, including agencies, boards, hospitals, and universities' from liability, governmental immunity protects political subdivisions of the State, including cities." No. 02-25-00406-CV, 2026 WL 71144, at *4 n.4 (Tex. App.—Fort Worth Jan. 8, 2026, no pet.) (mem. op.) (quoting *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

6

facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *see Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (stating that in analyzing a plea to the jurisdiction, we may consider the facts alleged in the petition and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties"). Because the existence of subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 470 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g).

When a plea to the jurisdiction challenges the pleadings, we determine whether the plaintiff has alleged facts that affirmatively demonstrate that the trial court has jurisdiction to hear the case. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (citing *Miranda*, 133 S.W.3d at 226). In making that determination, we liberally construe the pleadings in the plaintiff's favor, taking all factual assertions as true and looking to the plaintiff's intent. *Id.* (citing *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)). Under that construction, the plaintiff bears the burden of demonstrating, through the facts alleged in the live pleading, that immunity from suit has been waived. *Doe v. City of Fort Worth*, 646 S.W.3d 889, 897 (Tex. App.—Fort Worth 2022, no pet.). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading

7

sufficiency, and the plaintiff should be afforded an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27; *City of Westworth Village v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied). If, however, the pleadings are incurably defective—that is, the allegations affirmatively negate the trial court's jurisdiction—then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 227.

We analyze whether the trial court has jurisdiction on a claim-by-claim basis. *Rancho De Los Arboles LLC v. Town of Cross Roads*, No. 02-25-00208-CV, 2026 WL 253459, at *4 (Tex. App.—Fort Worth Jan. 30, 2026, no pet.) (mem. op.). Thus, we must analyze each of the claims in a plaintiff's live pleading to determine whether they were properly dismissed for want of jurisdiction. *Id.*

## B. Goodfellow's Argument that the Trial Court Failed to Evaluate Jurisdiction Based on Her Live Pleading

In her first issue, Goodfellow argues that the trial court failed to evaluate jurisdiction based on her live pleading. According to Goodfellow, because she filed her first amended petition after Appellees filed their plea to the jurisdiction, Appellees' plea "should have been denied as moot."

We begin our discussion of this issue by determining whether the trial court evaluated its jurisdiction based on Goodfellow's original petition or her first amended petition. We recognize that when addressing a plea to the jurisdiction, a court's

8

analysis should begin with the live pleadings. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012); *Grant v. Espiritu*, 470 S.W.3d 198, 201 (Tex. App.— El Paso 2015, no pet.).

Here, when the trial court signed its order granting the plea to the jurisdiction and the motion to dismiss, it did so after Goodfellow had filed her first amended petition. Indeed, on November 7, the trial court asked Appellees to advise whether they thought that the plea and the motion were "still ripe." The trial court gave Appellees and Goodfellow the opportunity to submit letter briefs on the issue. Appellees filed their letter brief on November 12, and Goodfellow filed her letter brief the following day. Notably, the trial court's order expressly stated that the court had considered "the pleadings on file," which would have necessarily included Goodfellow's first amended petition. Thus, we reject Goodfellow's argument that the trial court failed to evaluate its jurisdiction based on her live pleading. *See Harris County v. McFarland*, No. 01-24-00331-CV, 2025 WL 51847, at \*4 (Tex. App.— Houston [1st Dist.] Jan. 9, 2025, pet. denied) (mem. op.) (holding that order's statement that trial court had considered "the file" when considering plea to the jurisdiction was "broad enough to indicate it [had] considered the live pleadings before ruling on the [p]lea"); *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.) ("Because the rules prescribe no deadline for pleadings amendments before the hearing or submission of a plea to the jurisdiction, and because the trial judge recited that he 'reviewed the pleadings of the

9

parties,' we conclude that [the appellee's] amended pleadings were the live pleadings before the trial judge when he denied the City's pleas to the jurisdiction.").

We next consider Goodfellow's argument that Appellees' plea to the jurisdiction should have been denied as moot because of the filing of her first amended petition. Texas case law establishes that arguments raised in a plea to the jurisdiction do not become moot merely because the plaintiff has amended her petition; indeed, claims that remain after the pleading has been amended may be disposed of through a plea to the jurisdiction filed prior to the amended pleading, and they may also be disposed of by raising a jurisdictional argument during another part of the proceeding, even in the appellate stage. *See, e.g.*, *McFarland*, 2025 WL 51847, at *5 ("[I]t is well-settled that claims that remain following an amended pleading may be disposed of through a plea to the jurisdiction filed prior to the amended pleading."); *City of San Antonio v. Reyes*, No. 04-16-00748-CV, 2017 WL 3701772, at *4 (Tex. App.—San Antonio Aug. 23, 2017, no pet.) (mem. op.) (holding that city's challenge that trial court lacked jurisdiction because it was entitled to exception to waiver of immunity "was not rendered moot by the [plaintiffs'] amended pleading" when the "amendment did not address or cure" the city's challenge); *Dominguez v. City of Fort Worth*, No. 02-06-196-CV, 2008 WL 623583, at *3 & n.16 (Tex. App.—Fort Worth Mar. 6, 2008, pet. denied) (mem. op.) (considering immunity argument raised for first time on appeal and noting that "[g]enerally, a challenge to subject[-]matter jurisdiction may be raised at any time").

10

We overrule Goodfellow's first issue.

## C. Goodfellow's Claims for Prospective Injunctive Relief Against the City

In her second issue, Goodfellow argues that immunity does not bar her claims against the City for prospective injunctive relief. Appellees counter that Goodfellow is not entitled to prospective injunctive relief against the City because she has not asserted any direct claim against it. We agree with Appellees.

Injunctive relief is an equitable remedy that is only available when liability is established through a cause of action. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011); *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (stating that an applicant for an injunction must plead and prove a cause of action against the defendant); *Brittingham v. Ayala*, 995 S.W.2d 199, 201 (Tex. App.—San Antonio 1999, pet. denied) ("An injunction is an equitable remedy, not a cause of action.").

In her first amended petition, Goodfellow did not assert any causes of action against the City; rather, as to the City, she only sought prospective injunctive relief. In that petition, Goodfellow stated, "The Plaintiff seek[s] only prospective injunctive relief against [the City]," noting that her "claims for injunctive relief against [the City] are prospective, . . . [and are] not to recover damages."[7] Because Goodfellow has not

---

[7]Indeed, in her brief, Goodfellow acknowledges that "[i]n her now live First Amended Petition, [her] claims brought against [the City] are only for prospective injunctive relief to stop discharging and diverting surface and groundwater onto and into [her] home and property."

pleaded an underlying cause of action against the City, her purported "claims" for prospective injunctive relief fail, and the trial court properly dismissed them. *See Etan Indus., Inc.*, 359 S.W.3d at 625 n.2; *Butnaru*, 84 S.W.3d at 204; *Brittingham*, 995 S.W.2d at 201; *see also City of Killeen v. Oncor Elec. Delivery Co. LLC*, 709 S.W.3d 746, 762 (Tex. App.—Austin 2025, no pet.) (stating that trial court would only have jurisdiction to consider plaintiff's claims seeking to enjoin city if plaintiff had also alleged a viable underlying claim against city); *In re Torres*, No. 07-19-00220-CV, 2019 WL 3437758, at *2 n.1 (Tex. App.—Amarillo July 30, 2019, orig. proceeding) (mem. op.) (stating that the "issuance of injunctive relief is dependent upon the viability of an underlying cause of action" and that "[w]ithout alleging a cause of action, one has not satisfied the first step in obtaining injunctive relief").

We overrule Goodfellow's second issue.

## D.  Goodfellow's Ultra Vires Claims Against the Individual Appellees

In her third issue, Goodfellow argues that she adequately pleaded ultra vires claims against the Individual Appellees.

Under Texas law, a suit against a governmental employee in her official capacity is generally considered to be a suit against the governmental employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). An employee sued in her official capacity has the same governmental immunity, derivatively, as her governmental employer. *Id.* at 382–83. A narrow exception to this rule exists for ultra vires claims—claims that may be brought against a governmental official if the official engages in acts that

are beyond the official's lawful authority. *City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018); *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). Ultra vires suits "do not attempt to exert control over the [S]tate—they attempt to reassert the control of the [S]tate." *Heinrich*, 284 S.W.3d at 372.

There are four requirements for an ultra vires suit. *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 308 (Tex. App.—Austin 2017, pet. denied). First, the suit must formally be pleaded against a governmental official, not the government principal. *Id.* (citing *Heinrich*, 284 S.W.3d at 372–73). Second, the suit must not complain about the government official's exercise of discretion, but rather, it must allege and ultimately prove that the official acted without legal authority or failed to perform a purely ministerial act. *Id.* at 308–09 (citing *Heinrich*, 284 S.W.3d at 372). Third, the remedy sought through the ultra vires action must be prospective in nature as opposed to an award of retrospective relief. *Id.* at 309 (citing *Heinrich*, 284 S.W.3d at 373–77). Fourth, an ultra vires claim that is otherwise within the trial court's jurisdiction may independently implicate immunity if it would have the effect of establishing a right to relief against the government for which the Legislature has not waived immunity. *Id.* (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388–89 (Tex. 2011)).

In her first amended petition, Goodfellow only asserted one claim against the Individual Appellees—a constitutional takings claim. That claim was contained in Count One of the first amended petition, which was described as "Violation of Article

13

I, Section 17 of the Texas Constitution: Taking or Damaging Public Property without Just Compensation Against the [Individual Appellees]." Within that count, Goodfellow set out the law regarding a constitutional takings claim, alleged that the Individual Appellees had engaged in certain ultra vires acts that caused damage to her property, and argued that those acts resulted in a taking of her property without just compensation. Through that claim, Goodfellow sought damages, not prospective relief.

The only "claim" in which Goodfellow sought prospective relief was brought against the City, not the Individual Appellees. Thus, while Goodfellow has mentioned certain ultra vires acts when discussing her constitutional takings claim, the relief she seeks through that claim is not available for an ultra vires claim; accordingly, we hold that Goodfellow has not adequately pleaded an ultra vires claim.[8] *See Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 (stating that "*ultra vires* claimants are only entitled to prospective relief" and that "[i]f the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie"); *Casper v.*

---

[8]Moreover, Goodfellow's pleadings are woefully inadequate with respect to the alleged ultra vires acts. She does not specify what the various Individual Appellees did to act without legal authority or how they failed to perform a purely ministerial act; rather, she only speaks in vague generalities. *See Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.) ("[M]erely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed.").

14

*Tex. Woman's Univ.*, No. 02-22-00345-CV, 2023 WL 5617129, at *4 (Tex. App.—Fort Worth Aug. 31, 2023, pet. denied) (mem. op.) ("Although sovereign immunity generally bars suits against state officers in their official capacities, the law allows for ultra vires suits that seek prospective, injunctive relief—rather than monetary damages—against those officers."); *Lazarides v. Farris*, 367 S.W.3d 788, 805 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The Texas Supreme Court has limited the remedies for *ultra vires* claims against [S]tate officials to prospective declaratory and injunctive relief.").

We overrule Goodfellow's third issue.

## E. Goodfellow's Constitutional Takings Claim Against the Individual Appellees

In her fourth issue, Goodfellow argues that she adequately pleaded a constitutional takings claim against the Individual Appellees. Appellees respond that Goodfellow is barred from asserting a constitutional takings claim against the Individual Appellees because "[t]here is no cause of action for a constitutional taking against an individual."[9]

Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without

[9]Although Appellees did not raise this argument in their plea to the jurisdiction and motion to dismiss (apart from raising it in their letter brief regarding mootness), we may consider it because subject-matter jurisdiction may be raised at any time, including on appeal. *See Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250 (Tex. 2023); *Dominguez*, 2008 WL 623583, at *3 & n.16.

adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. To prove a viable constitutional takings claim under Article I, Section 17, a plaintiff must establish that (1) an entity with eminent domain power intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use. *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 26 (Tex. 2024); *Cerkezi Enters., L.L.C.*, 2026 WL 71144, at *5. Notably, "there is no cause of action under Article I, Section 17, against non-governmental parties." *Shugart v. Thompson*, No. 06-15-00101-CV, 2017 WL 117331, at *5 (Tex. App.—Texarkana Jan. 12, 2017, no pet.) (mem. op.); *see Edwards v. Mesa Hills Mall Co. Ltd. P'ship*, 186 S.W.3d 587, 591 (Tex. App.—El Paso 2006, no pet.); *see also San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 839 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("An inverse-condemnation action is a constitutional claim in which the property owner asserts that a governmental entity intentionally performed acts that resulted in a 'taking' of the property for public use, without formally condemning the property.").

Here, Goodfellow's constitutional takings claim has only been asserted against the Individual Appellees. Such a claim necessarily fails because it cannot be maintained against individuals; rather, a constitutional takings claim can only be maintained against *an entity* with eminent domain power. *See Self*, 690 S.W.3d at 26; *Cerkezi Enters., L.L.C.*, 2026 WL 71144, at *5; *see also Shugart*, 2017 WL 117331, at *6 ("[B]ecause the individual appellees have no individual liability for constitutional

16

takings in their individual capacities and because a suit against them in their official capacities is nothing more than a suit against the governmental unit that employs them, the trial court correctly granted the plea to the jurisdiction as to Shugart's constitutional takings claim as against the individual [a]ppellees."); *Edwards*, 186 S.W.3d at 591 (holding that appellant's constitutional takings claim failed because it was brought against appellees, who were "not a governmental entity"); *cf. Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 801 (Tex. 2016) (stating that the Texas Supreme Court has "not held that the public-use element [of a constitutional takings claim] is met where the government does nothing more than approve plats or building permits for private development"). Thus, the trial court properly dismissed Goodfellow's constitutional takings claim.

We overrule Goodfellow's fourth issue.

### IV. CONCLUSION

Having overruled Goodfellow's four issues, we affirm the trial court's order granting Appellees' plea to the jurisdiction and motion to dismiss.

/s/ Dana Womack

Dana Womack
Justice

Delivered: June 25, 2026